United States District Court
Southern District of Texas

**ENTERED**

August 25, 2025

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| BLANCA MALDONADO, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-24-1202 |
| | § | |
| HARRIS COUNTY, TEXAS and HENRY | § | |
| GONZALES (in his official capacity), | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This case arises from an employee's injury, unrelated to her work, and her subsequent dispute with her employer over whether she could work at home during her recovery as an accommodation. Blanca Maldonado worked for the Harris County Juvenile Probation Department of Harris County, Texas, beginning in October 2007. In December 2022, Maldonado fractured her ankle at home. She had surgery and could not walk or drive for about two months. She took two months of leave under the Family Medical Leave Act after her request to work at home was rejected. When she could drive and walk, she returned to work. The Department notified her that it would eliminate her position effective May 2023. Maldonado asserts that the Department discriminated against her because of her disability and failed to accommodate her disability, in violation of the Americans with Disabilities Act and the Rehabilitation Act; interfered with her right to reinstatement under the Family Medical Leave Act; and retaliated against her for asserting her rights under all three statutes. (Docket Entry No. 1 ¶¶ 28–45). The defendants assert that the new Deputy Director of Human Resources, hired in November 2022 to assume the role in January 2023, had decided that she wanted to replace Maldonado with someone with more human-

resources experience and that the termination had nothing to do with Maldonado's injury or FMLA leave.

Harris County and Gonzales have jointly moved for summary judgment on all claims. (Docket Entry No. 23).  Based on the pleadings, the motion, the response, the reply, the record, and the applicable law, the court grants the defendants' motion for summary judgment on Maldonado's disability-discrimination claims, her FMLA-interference claim, and all her retaliation claims.  Maldonado's reasonable-accommodation claim may proceed to trial.  The reasons for this ruling are described below.

## I.     Background

Maldonado was the administrative assistant to the Department's Deputy Director of Human Resources.  (Docket Entry No. 23-8).  In December 2022, Maldonado fractured her right ankle and had surgery.  (Docket Entry No. 23-3 at 57:10–12).  Maldonado was unable to put weight on her ankle or drive for about 12 weeks.  (*Id.* at 66:3–21).  With a doctor's note, she requested an accommodation to work from home for her recovery period.  (Docket Entry No. 24-3; *see* Docket Entry No. 23-7 at 2 ("[Maldonado] said she needed to work from home for 12 weeks . . . .")).  Assistant Deputy Director of Human Resources Andrea Rice forwarded Maldonado's request to the new Deputy Director of Human Resources, Lina Garcia.  (*See id.* at 1–2).  Rice and Garcia asked Maldonado to complete time sheets to determine if she had enough work to complete from home, granted her an accommodation to work from home until January 13, 2023, and forwarded her ADA and FMLA paperwork.  (Docket Entry No. 23-10 at 1–6).

On January 17, Rice called Maldonado to tell her that Garcia reviewed Maldonado's ADA documents and that her "accommodation was not approved."  (Docket Entry No. 23-5 at 1).  Rice asked if Maldonado would report to work, and Maldonado replied that she could not do so.  (*Id.*).

The next day, Maldonado asked Rice to clarify why she could not work from home, asserting that the Department had granted similar requests made by other employees. (Docket Entry No. 24-7 at 2–3). Garcia responded that Maldonado did not have enough work that could be completed from home. (*Id.* at 2). Garcia asked Maldonado to redo her work log to show how long it took her to complete each task she performed. (*Id.*). Garcia told Maldonado that "[i]n the meantime, if [she] [is] unable to come into the office, [she] may take FMLA leave." (*Id.*). Maldonado reiterated her belief that she was being treated less favorably than other employees and emphasized that she could not work in the office because of her injury. (Docket Entry No. 23-11 at 2). Garcia replied, "No one is requiring you to report to work tomorrow, but if you can, it would be easier to discuss your request in-person." (*Id.* at 1). Garcia's message concluded, "It is your choice whether to find someone to drive you to work and work in the office or take FMLA leave." (*Id.*). That day, Maldonado submitted her work-from-home log and notified Garcia of her intent to take FMLA leave, citing her inability to drive and Garcia's decision not to approve Maldonado's request to work from home during her recovery period. (*Id.*).

On February 13, while Maldonado was on FMLA leave, the Department posted a job advertisement for a human-resources administrative assistant who would report to Garcia. (Docket Entry No. 23-9 at 1–3). The position required an associate's degree in human resources, business, or a related field, as well as three years' work experience in human resources. (*Id.* at 1). Maldonado had a high-school degree, but not an associate's or bachelor's degree, and her work in the Department had been largely supportive and clerical. (Docket Entry No. 23-3 at 27:18–28:9; Docket Entry No. 24-1 ¶ 6). The Department hired Elizabeth Penagos, who had an associate's degree in business administration, to fill the position. (Docket Entry No. 23-6 at 20:13–23; Docket Entry No. 23-14 at 20:5–8; Docket Entry No. 24-11 at 16:16–19).

3

On March 13, Maldonado returned to work in the office.  On that day, Garcia sent Maldonado a letter notifying her that her position would be eliminated effective May 19.  (Docket Entry No. 23-8; *see also* Docket Entry No. 23 ¶ 8).  Garcia prepared, and Gonzales approved, the letter the week before Maldonado returned to work.  (*See* Docket Entry No. 24-12 at 1).  The letter explained that the Department had decided in "early December 2022" to eliminate Maldonado's position and "restructure the position to support" Garcia's "HR functions."  (Docket Entry No. 23-8 at 1).  The letter encouraged Maldonado to apply to other open positions with Harris County.  (*Id.*).  Maldonado was offered another position with the County but did not accept it because it paid less.  (Docket Entry No. 24-2 at 19:14–23:2; *see* Docket Entry No. 24-5 at 59:12–60:24 (suggesting the pay reduction would have been about three percent)).  The Department terminated Maldonado's employment in May 2023.  (Docket Entry No. 24-2 at 16:3–7).

Maldonado sued Harris County and Gonzales.  (Docket Entry No. 1).  She alleged that Harris County discriminated against her based on her disability when it failed to accommodate her request to work from home during her recovery period and when it decided to eliminate her position while she was on FMLA leave.  (Docket Entry No. 1 ¶¶ 28–36).  Maldonado also alleged that Gonzales interfered with her rights under the FMLA by failing to protect her position and reinstate her to that position when she returned from leave.  (*Id.* ¶¶ 37–43).  And Maldonado alleged that Harris County and Gonzales retaliated against her for taking leave and complaining of discrimination, in violation of the Americans with Disabilities Act, the Rehabilitation Act, and the Family Medical Leave Act.  (*Id.* ¶¶ 44–45).  Harris County and Gonzales have jointly moved for summary judgment.  (Docket Entry No. 23).[1]

---

[1]  Although Maldonado asserts some claims against only Harris County, some against only Gonzales, and some against both Harris County and Gonzales, Harris County is the real party in interest as to all claims because Maldonado sued Gonzales "only in his official capacity."  (Docket Entry No. 1 ¶ 4).  The court

## II.    The Legal Standard

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  An issue of fact is genuine if a reasonable trier of fact could return judgment for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a fact is material if it "might affect the outcome of the suit under the governing law" and is not "irrelevant or unnecessary."  *Id.*  The court must construe all the evidence and draw all reasonable inferences from the evidence in the light most favorable to the non-moving party.  *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988).  If the non-moving party prevails as a matter of law after so construing the record, or if reasonable minds could differ on the import of the evidence presented, the court must deny the motion for summary judgment.  *Sanchez v. Young Cnty.*, 956 F.3d 785, 791 (5th Cir. 2020).

## III.    Analysis

The court construes Maldonado's complaint as asserting four claims: (1) disability discrimination under the ADA and Rehabilitation Act, (Docket Entry No. 1 ¶¶ 28–36); (2) failure to accommodate under the ADA and Rehabilitation Act, (*id.*); (3) interference under the FMLA, (*id.* ¶¶ 37–43); and (4) retaliation under all three statutes, (*id.* ¶¶ 44–45).  Although Maldanado pleads her ADA and Rehabilitation Act claims separately, the same legal standards apply to claims under both statutes.  *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (per curiam).

---

accordingly construes all claims as brought against Harris County and grants the defendants' motion for summary judgment on claims against Gonzales because they are duplicative.  *See Harville v. Texas A&M Univ.*, 833 F. Supp. 2d 645, 659 n.8 (S.D. Tex. 2011) (granting a motion to dismiss claims brought against "individual defendants" sued in their official capacities "because those claims duplicate [the plaintiff's] claims against" Texas A&M).

The court grants the defendants' motion on all claims except Maldonado's reasonable-accommodation claim.  The court addresses each legal issue in turn.

### A.    Disability Discrimination under the Americans with Disabilities Act and Rehabilitation Act

Maldonado alleges discrimination under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.  Both statutes "prohibit employment discrimination against qualified individuals with disabilities."  *Kemp*, 610 F.3d at 234.  The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  And the Rehabilitation Act prohibits recipients of federal funding from "discriminati[ng]" against any "qualified individual with a disability."  29 U.S.C. § 794(a).

The same liability standards govern employment-discrimination claims under both statutes. *Id.* § 794(d); *Kemp*, 610 F.3d at 234.  A *prima facie* showing of discrimination requires a plaintiff to establish that (1) she "has a disability or was regarded as disabled," (2) she was "qualified for the job," and (3) she was "subject to an adverse employment decision" because of her disability. *Jennings v. Towers Watson*, 11 F.4th 335, 344 (5th Cir. 2021) (quoting *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017)).  If the employee makes the required showing, then the employer must proffer a legitimate, nondiscriminatory reason for the adverse employment action. *Diggs v. Burlington N. & Santa Fe Ry. Co.*, 742 F. App'x 1, 3 (5th Cir. 2018) (per curiam).  If the employer does so, the burden shifts back to the employee to raise a factual issue material to determining that the reason is pretextual or that the employee's disability was still a substantial motivating factor in the employer's decision to take the adverse employment action against the employee. *Id.*

The court assumes that Maldonado made a *prima facie* showing of discrimination but concludes that Maldonado cannot prevail under the rest of the burden-shifting framework. Harris County has identified a legitimate, nondiscriminatory reason for terminating Maldonado: to "restructure" Maldonado's position "to support" the newly hired Deputy Director of the Human Resources, Lina Garcia. Harris County had promised Garcia that she could select the type of person she wanted to support her as the Deputy Director of the Human Resources Department. Garcia wanted to fill the position with an individual who had substantive human-resources experience, which Maldonado lacked. (Docket Entry No. 23-8 at 1). Harris County has met its burden of producing a legitimate, nondiscriminatory reason for terminating Maldonado's employment. *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995); *see Eugene v. Rumsfeld*, 168 F. Supp. 2d 655, 666 (S.D. Tex. 2001) (explaining that the employer's burden is only to produce through admissible evidence a legitimate, nondiscriminatory basis for its employment decision).

Maldonado has not met her burden at the final step of the burden-shifting framework. She has not submitted or pointed to evidence that would permit a reasonable trier of fact to find that Harris County's explanation is pretextual or that her disability substantially motivated Harris County's employment decision. *See Diggs*, 742 F. App'x at 3. The "evidence taken as a whole" cannot "allow a jury to infer that the actual reason" for terminating Maldonado was discriminatory. *Eugene*, 168 F. Supp. 2d at 667 (quoting *Vadie v. Miss. State Univ.*, 218 F.3d 365, 372 (5th Cir. 2000)).

Maldonado has not submitted or identified evidence that would support an inference that Harris County's proffered reason for terminating her was false and a pretext for discrimination. *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)). The record evidence does

not show that Harris County's statements that it eliminated Maldonado's position to hire a candidate better suited to supporting Garcia's human-resources responsibilities were false. Garcia testified that she discussed Maldonado's position with Gonzales in November 2022—one month before Maldonado broke her ankle—because when Garcia agreed to become the Deputy Director of the Human Resources Department, it was on Gonzales's assurance that Garcia could hire an assistant with substantive experience in human resources, who could do more than answer her phones. (Docket Entry No. 23-6 at 19:22–20:12; *see* Docket Entry No. 24-1 ¶ 6 (listing Maldonado's essential job functions as "handling phone calls, providing scheduling and other assistance to department staff, and coordinating other events")). In Garcia's January 4, 2023, email to Rice about Maldonado's work-from-home request, Garcia stated that the Department was reconsidering Maldonado's position because Garcia wanted to change it from "an administrative assistant . . . to an HR position." (Docket Entry No. 23-7 at 1). The March 13, 2023, letter notifying Maldonado that her position would be eliminated effective May 19, 2023, also stated that Garcia had decided "to eliminate the Deputy Director of Human Resources' administrative assistant position and restructure the position to support HR functions." (Docket Entry No. 23-8 at 1).

Maldonado argues that Harris County's proffered reasons for terminating her position were inconsistent. In some cases, inconsistencies can support an inference of pretext. *See Nasti v. CIBA Specialty Chemicals Corp.*, 492 F.3d 589, 594 (5th Cir. 2007) ("A court may infer pretext where a defendant has provided inconsistent or conflicting explanations for its conduct."). Although Garcia's March 13, 2023, letter to Maldonado stated that the Department was going "to eliminate the Deputy Director of Human Resources' administrative assistant position," (Docket Entry No.

23-8 at 1), the February 2023 job posting sought to hire an "HR Administrative Assistant" to assist "the Deputy Director of Human Resources," (Docket Entry No. 23-9 at 1).

But that inconsistency is not, on this record, a genuine dispute of material fact that precludes summary judgment. The remainder of the posting is consistent with Garcia's emphasis on hiring someone who could provide substantive human-resources support, rather than primarily doing clerical work, such as answering the telephones. The posting states that the employee will support the operations of the human-resources department; will need a degree in human resources, business, or a related field; and will perform technical work with human-resources databases. (*See id.* at 1–2). Maldonado did not meet most of these requirements.

By contrast, the person Garcia hired, Penagos, does meet these requirements. Penagos had an associate's degree in business administration, (Docket Entry No. 24-11 at 16:16–19), while Maldonado had graduated from high school, (Docket Entry No. 24-2 at 27:18–28:3). Penagos did not perform some of the duties Maldonado had performed when Maldonado was an administrative assistant in the Department. For example, Penagos did not coordinate training for the Department's employees, book lodging and flights for employee training, or create a database of employees' past trainings. (*Compare* Docket Entry No. 23-10 at 5–6, *with* Docket Entry No. 24-11 at 30:14–31:25). On the other hand, Penagos completed tasks Maldonado did not, including conducting background checks herself, attending job fairs, and processing claims for unemployment, FMLA, and workers' compensation benefits. (*Compare* Docket Entry No. 24-1 ¶ 6 (listing Maldonado's "essential job duties" as "handling phone calls, providing scheduling and other assistance to department staff, and coordinating other events"), *with* Docket Entry No. 24-11 at 25:12-20, 33:17–21, 40:10–41:1 (questioning Penagos on her responsibilities), *and* Docket Entry No. 24-5 at 23:5–24:17 (questioning Garcia about Penagos's responsibilities)). A reasonable

trier of fact would not identify an inconsistency in this record that could support finding Harris County's reasons for eliminating Maldonado's position as pretextual.

Maldonado's final argument is that Harris County's proffered explanation "lacks credibility and documentary support." (Docket Entry No. 24 ¶ 26).  But a "trier of fact may not simply choose to disbelieve the employer's explanation in the absence of any evidence showing why it should do so." *Rutherford v. Harris Cnty.*, 197 F.3d 173, 184 (5th Cir. 1999) (quoting *Scott v. Univ. of Miss.*, 148 F.3d 493, 504 (5th Cir.1998)).  The testimony and documents in the summary judgment record support Harris County's explanation that it sought to hire an individual with stronger qualifications and who could handle more substantive human-resources work than Maldonado.  A "plaintiff must provide sufficiently specific, substantive reasons for her claim of pretext," *Eugene*, 168 F. Supp. 2d at 677, and Maldonado has not done so.

In addition, no evidence in the record suggests that Harris County terminated Maldonado *because of* her disability.  *See Eugene*, 168 F. Supp. 2d at 667 (explaining that discrimination must be the real reason for the termination); *Diggs*, 742 F. App'x at 3 (explaining that a plaintiff may prevail by showing that a disability substantially motivated an employment decision).  Maldonado points to only the January 4, 2023, email from Rice to Garcia about Maldonado's leave request to support her claim that her disability was the reason her position was eliminated.  (*See* Docket Entry No. 24 ¶ 26).  In that email, Rice raised the issue of Maldonado's leave request but also explained that Maldonado performed a limited set of tasks, complained that the Department was "just kind of given" Maldonado as an employee, and commented that she did not "know if [Maldonado] will go with [Garcia] once [she] come[s] over or [if] something else will occur with her, perhaps a demotion/reclassification or movement to another area." (Docket Entry No. 24-8 at 2).  Towards the end of the email, Rice adds that the Department was "recently thinking of additional duties to

10

give [Maldonado]" but did not "know[] what the long term plan was for her since she was placed down [on the third floor] back in August" 2022. (*Id.*). Maldonado argues that this email proves that her disability motivated Harris County's termination decision because "[i]mmediately after [Maldonado] informed her employer of her disability," Garcia and Rice held a discussion "about [Maldonado's] future," noting her limited skills and the possibility of a demotion, reclassification, or transfer. (Docket Entry No. 24 ¶ 26).

Timing alone is not enough to raise a genuine factual dispute material to determining whether an employer's adverse employment decision was motivated by discrimination. *See, e.g.*, *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 354 (5th Cir. 2014) ("The timing of Rogers's termination, absent more, is insufficient to raise a genuine factual dispute that Bromac's proffered reason for terminating her was mere pretext."); *Harris v. Dallas Indep. Sch. Dist.*, 435 F. App'x 389, 393 (5th Cir. 2011) (per curiam) ("[A]lthough the timing of the decision can establish a prima facie case of retaliation and is a factor in considering pretext, alone it is insufficient to demonstrate pretext."); *Samford v. Stolle Corp.*, No. 98-41219, 1999 WL 346958, at *2 (5th Cir. May 17, 1999) (per curiam) ("Although the timing of a plaintiff's discharge is relevant to our inquiry, that factor alone in the absence of other relevant evidence of retaliatory motive is not sufficient to raise a genuine issue of material fact in this case.").

The email does not provide "other significant evidence of pretext" that, when combined with its "suspicious timing," enables Maldonado to survive summary judgment. *Evans v. City of Houston*, 246 F.3d 344, 356 (5th Cir. 2001). Rather, in that email, Rice and Garcia discuss the same reasons for terminating Maldonado that they raise throughout the record: Maldonado did not satisfy Garcia's need for an employee who had human-resources experience and who would provide substantive assistance. Garcia testified that she discussed Maldonado's position when she

was hired in November 2022 because Gonzales told Garcia she could hire an assistant with more human-resources experience. (Docket Entry No. 23-6 at 19:22–20:12). Garcia replied to Rice's January 4, 2023, email by reiterating that she did not "believe [she] will need an administrative assistant and was thinking of changing the position to an HR position." (Docket Entry No. 23-7 at 1). And in the March 13, 2023, letter to Maldonado stating that her position would be eliminated, Garcia informed Maldonado of that reasoning. (Docket Entry No. 23-8 at 1). Maldonado "has pointed to no evidence" that Garcia or another Department official took her "disability into account in terminating" her employment. *January v. City of Huntsville*, 608 F. Supp. 3d 488, 504 (S.D. Tex. 2022), *aff'd*, 74 F.4th 646 (5th Cir. 2023).

Because the burden to prove the "ultimate question" of intentional discrimination rests with Maldonado, and because she has not submitted or identified evidence that would "allow a jury to infer that the actual reason for" her termination "was discriminatory," *Eugene*, 168 F. Supp. 2d at 667 (quoting *Vadie*, 218 F.3d at 372), the court grants summary judgment on Maldonado's Americans with Disabilities Act and Rehabilitation Act discrimination claims.

### B.    Failure to Accommodate Under the Americans with Disabilities Act and the Rehabilitation Act

Disability "discrimination [also] includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'" *Jones v. Lubbock Cnty. Hosp. Dist.*, 834 F. App'x 923, 926 (5th Cir. 2020) (per curiam) (quoting 42 U.S.C. § 12112(b)(5)(A)). To prove a failure-to-accommodate claim, Maldonado must show that (1) she is a qualified individual with a disability; (2) Harris County knew of Maldonado's disability and how it limited her ability to work; and (3) Harris County failed to make reasonable accommodations for the limitations it knew about. *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 587 (5th Cir. 2020). An employer must engage in an "interactive process" and have a

"meaningful" dialogue to work out an accommodation for known disabilities. *Munoz v. Seton Healthcare, Inc.*, 557 F. App'x 314, 319 (5th Cir. 2014) (per curiam). The employer does not need to accept an employee's accommodation requests if doing so "would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A).

The parties dispute the first and third elements of Maldonado's claim: whether Maldonado is disabled and whether Harris County failed to make reasonable accommodations for the limitations it knew about. (Docket Entry No. 23 ¶¶ 24–27; Docket Entry No. ¶¶ 27–29). Maldonado can establish both elements.

### 1. Disability

"The ADA defines disability as '(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment.'" *Kemp*, 610 F.3d at 235 (quoting 42 U.S.C. § 12102(1)). "Major life activities include 'caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.'" *Id.* (quoting 42 U.S.C. § 12102(2)(A)). The key question is whether Maldonado had a physical impairment—her "ankle problems"—that "substantially limited [her] major life activities of standing, walking, and working." *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996).

Congress set a low bar for proving a disability. Congress passed the ADA Amendments Act of 2008 to repudiate a series of Supreme Court opinions that stringently applied the ADA's disability requirement and to "reinstat[e]" the ADA's "broad scope of protection." Pub. L. No. 110–325, § 2(b)(1), 122 Stat. 3553, 3554 (2008). Courts must now interpret the definition of disability "in favor of broad coverage." 42 U.S.C. § 12102(4)(A). The substantial-limitation test

is "not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i); *accord Substantially Drerup v. Consol. Nuclear Sec., L.L.C.*, No. 21-10600, 2022 WL 3335780, at *3 (5th Cir. Aug. 12, 2022) (per curiam); *Garrett v. Thaler*, 560 F. App'x 375, 383 (5th Cir. 2014) (per curiam). Temporary limitations, even those "last[ing] fewer than six months," may qualify an individual for ADA protections. *Silva v. City of Hidalgo*, 575 F. App'x 419, 423 n.2 (5th Cir. 2014) (per curiam) (quoting 29 C.F.R. § 1630.2(j)(1)(ix)); *see Mueck v. La Grange Acquisitions, L.P.*, 75 F.4th 469, 481 (5th Cir. 2023) (explaining that "an impairment need not be 'permanent or long-term' to qualify as a disability"); *see also, e.g.*, *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 92–93 (2d Cir. 2021); *Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163, 167–68 (3d Cir. 2015); *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 330–33 (4th Cir. 2014); *Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1172–73 (7th Cir. 2013) (per curiam); *Shields v. Credit One Bank, N.A.*, 32 F.4th 1218, 1224–25 (9th Cir. 2022). Maldonado must show only that she is substantially limited in performing "a major life activity a*s compared to most people in the general population*." *Williams v. Tarrant Cnty. Coll. Dist.*, 717 F. App'x 440, 446 (5th Cir. 2018) (per curiam) (emphasis added) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). Such an inquiry "usually will not require scientific, medical, or statistical analysis." *Id.* at 446–47 (quoting 29 C.F.R. § 1630.2(j)(1)(v)).

Maldonado testified that, after her ankle injury, she struggled in caring for herself, bathing, and walking without assistance. (Docket Entry No. 24-1 ¶ 4; Docket Entry No. 24-2 at 74:3–10, 75:2–14). Maldonado also explained that, during her recovery period, she had physical therapy, was unable to drive, and used a scooter for mobility. (Docket Entry No. 24-1 ¶ 4; Docket Entry No. 24-2 at 73:1–75:14). She explained that she is "still dealing" with her injury because she "occasionally lose[s] [her] balance and [has] suffered falls because [her] ankle is not like it used to be." (Docket Entry No. 24-1 ¶ 4). Someone who cannot walk for several months and must use

a scooter for basic mobility cannot walk like "most people in the general population." *Williams*, 717 F. App'x at 446 (quoting 29 C.F.R. § 1630.2(j)(1)(ii)); *see E.E.O.C. v. E.I. DuPont de Nemours*, 347 F. Supp. 2d 284, 289 (E.D. La. 2004) ("[A] person who uses other assistive devices, such as a cane, can be substantially limited in walking."), *aff'd*, 480 F.3d 724 (5th Cir. 2007).

The defendants do not dispute that Maldonado was limited in her ability to walk in early 2023. *See Burch v. Coca-Cola Co.*, 119 F.3d 305, 315 (5th Cir. 1997) ("[A]n impairment must be substantially limiting at the time of the requested accommodation."). They instead argue that Maldonado's injury does not qualify as a disability because the ADA does not cover "broken limbs, sprained joints, concussions, appendicitis, and influenza." (Docket Entry No. 23 ¶ 20 (quoting *Strife v. Westex Sec. Servs., Inc.*, No. H-18-cv-3513, 2019 WL 3321741, at *3 (S.D. Tex. July 24, 2019))); *see also Harper v. Fort Bend. Indep. Sch. Dist.*, No. 16-cv-1678, 2017 WL 1881971, at *11 (S.D. Tex. May 9, 2017); *Freeman v. Savard Labor & Marine Inc.*, No. 2:20-cv-01621, 2023 WL 4230547, at *3 (W.D. La. June 27, 2023). But the Fifth Circuit has recognized that Congress repudiated such a narrow approach to the ADA's definition of disability. After the amendments to the ADA, "an impairment need not be 'permanent or long-term' to qualify as a disability." *Mueck*, 75 F.4th at 481. As a result, case law requiring plaintiffs to show that typical short-term injuries, like broken bones, caused some substantially limitation "beyond the short-term effects" of the injury, *Strife*, 2019 WL 3321741, at *3; *Harper*, 2017 WL 1881971, at *11, is "inapposite," *Mueck*, 75 F.4th at 481.

There is a triable issue of fact as to whether Maldonado was substantially limited in her ability to walk when she requested the accommodation of working from home.

### 2. Reasonable Accommodation

The parties dispute whether Harris County reasonably accommodated Maldonado while she was recovering from her injury. Maldonado argues that FMLA leave is not a reasonable accommodation under the ADA and that Harris County should have allowed her to work from home during her recovery period. (Docket Entry No. 23 ¶¶ 27–29). Harris County responds that FMLA leave is a reasonable accommodation under the ADA and that work-from-home status was an unreasonable request on Maldonado's part. (Docket Entry No. 24 ¶¶ 24–27). These disputes present triable issues of fact.

"Time off, whether paid or unpaid, *can* be a reasonable accommodation." *Jennings*, 11 F.4th at 344 (emphasis added) (quoting *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 418 (5th Cir. 2017)). Whether leave is a reasonable accommodation is fact-dependent. *Cf. Dickerson v. U.S. Dep't of Veterans Affs.*, No. H-21-cv-3805, 2022 WL 2067925, at *5 (S.D. Tex. June 8, 2022) ("Whether unpaid leave is an adverse employment action is fact-dependent."). On the one hand, "an employer ordinarily satisfies its duties under the ADA by granting the FMLA request." *Arana v. Temple Univ. Health Sys.*, 776 F. App'x 66, 71 (3d Cir. 2019). That's so even if the employee does not wish to go on leave. "Temporary unpaid leave is not rendered unreasonable simply because it 'involve[s] some cost' to" the employee, *Austgen v. Allied Barton Sec. Servs., L.L.C.*, 815 F. App'x 772, 775 (5th Cir. 2020) (per curiam), because the "ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation," *E.E.O.C. v. Agro Distrib.*, 555 F.3d 462, 471 (5th Cir. 2009). But on the other hand, temporary, unpaid leave can qualify as an adverse employment decision, *Stringer v. N. Bolivar Consol. Sch. Dist.*, 727 F. App'x 793, 799 (5th Cir. 2018) (per curiam), and thus an unreasonable accommodation, *see Dickerson*, 2022 WL 2067925, at *5–6.

*Dickerson* provides an example of the type of claim Maldonado is making. There, the plaintiff was a supply technician for the Department of Veterans Affairs, which required him to push a cart carrying around 300 pounds of equipment. *See id.* at *1. He injured himself on the job, tearing a rotator cuff and straining his lower back. *Id.* Dickerson's supervisor placed him on leave because the supervisor thought Dickerson could no longer fulfill his job duties, but Dickerson claimed that he could have performed most of the tasks his job required; he just needed an accommodation that exempted him from lifting heavy objects. *Id.* Dickerson alleged that the Department of Veterans Affairs called his absence "unpaid leave" when it was really a de facto unpaid suspension because he wanted to and could return to work but was not allowed to do so. *Id.* The defendants moved to dismiss Dickerson's failure-to-accommodate claim, but the court denied the motion. *Id.* at *6. Dickerson alleged that "he was qualified to do most of his job tasks other than the 'occasional' lifting of heavy objects" and that "the Department failed to make reasonable accommodations because it allowed him to work only 'without restrictions' and made no effort to see if he could work with a temporary restriction." *Id.* The court held that Dickerson properly "allege[d] that the Department failed to accommodate his disability." *Id.*

Maldonado presents a similar story. She declared that she could have performed her essential tasks—"handling phone calls, providing scheduling and other assistance to department staff, and coordinating other events"—from home, as she had "done in 2020 and 2021" during the COVID-19 pandemic. (Docket Entry No. 24-1 ¶ 6). She declared that it "was a normal practice to work from home" and that many of her coworkers did so with no issues. (*Id.* ¶ 5). Her deposition presents similar testimony. (*See* Docket Entry No. 24-2 at 31:1–34:16). She argues that when she sought to work from home for the three months after her injury, Garcia denied the request, effectively forcing her to take FMLA leave. (*See* Docket Entry No. 24-1 ¶ 7).

The defendants offer several responses, some legal and some factual.   First, they point to the "general consensus among courts . . . that regular work-site attendance is an essential function of most jobs."  (Docket Entry No. 23 ¶ 26 (quoting *Credeur v. Louisiana*, 860 F.3d 785, 793 (5th Cir. 2017)).   An employer, they add, "is not required to allow disabled workers to work at home, where their productivity inevitably would be greatly reduced."  *Hypes v. First Commerce Corp.*, 134 F.3d 721, 726 (5th Cir. 1998) (per curiam) (quoting *Vande Zande v. State of Wis. Dept. of Admin.*, 44 F.3d 538, 544 (7th Cir. 1995)); *see Allen v. Babcock & Wilcox Tech. Servs. Pantex, LLC*, No. 2:12-cv-00225, 2013 WL 5570192, at *5, *9 (N.D. Tex. Oct. 9, 2013) (concluding that a training-specialist job "demanded" in-person interaction for project success).   But these cases rest on factual determinations that in-person work attendance was essential to the job at issue.  *See Montague v. United States Postal Serv.*, No. 22-20113, 2023 WL 4235552, at *2 (5th Cir. June 28, 2023).   Seven factors guide that inquiry: the employer's judgment; written job descriptions; the amount of time spent performing the function; the consequences of not requiring the incumbent to perform the function; the terms of a collective bargaining agreement; the work experience of past incumbents; and the current work of similar incumbents in similar jobs.  *Id.*   Relevant evidence from those categories can create a dispute of fact as to whether work from home is a reasonable accommodation.   For instance, in *Montague*, the Fifth Circuit found a genuine factual dispute material to determining whether an employee could work from home in the mornings because the employee identified other employees in similar positions who consistently worked from home for periods ranging from one day a week to full work weeks.  *See id.* at *3.

The record does not include testimony from Maldonado's coworkers who performed similar jobs stating that they worked from home for extended periods.   But Maldonado's job description did not require in-person attendance.  *See Montague*, 2023 WL 4235552, at *3

("Montague's written job description does not mention travel as an essential part of her job.");
*Credeur*, 860 F.3d at 792 (explaining that "[w]ritten job descriptions" determine if a job function is essential).  When questioned, Garcia could not name one of Maldonado's duties that required consistent in-person attendance. (Docket Entry No. 24-5 at 45:25–46:4, 47:12–16).[2]  Garcia explained that many Department employees work at home from time to time, (*id.* at 13:5–12), and confirmed that the Department "grant[s] ADA for employees to work from home . . . from time to time," (*id.* at 13:25–14:10).  Because Garcia was Maldonado's supervisor, her testimony supports the reasonableness of Maldonado's requested accommodation.  *See Montague*, 2023 WL 4235552, at *3 (relying on the testimony of "Montague's supervisor" to assess whether travel was a necessary aspect of her job).  Although case law recognizes that in-person attendance is an essential aspect of many jobs, Maldonado's summary-judgment argument is not based solely on "unsupported testimony that she could perform her job functions from home."  *Credeur*, 860 F.3d at 792 (quoting *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 763 (6th Cir. 2015)).  Instead, Maldonado's supervisor's testimony creates a genuine factual dispute material to determining whether Maldonado's request to continue to work from home while her ankle healed was reasonable.

Second, the defendants highlight that they continued to seek additional information about Maldonado's productivity when she worked from home.  (Docket Entry No. 27 ¶ 4; *see, e.g.*, Docket Entry No. 23-11).  They argue that Maldonado affirmatively chose FMLA leave as her accommodation, thus terminating her request for an indefinite work-from-home accommodation,

---

[2] The defendants dispute this issue by pointing to Penagos's testimony that she could not conduct personnel-related work from home and that she did not work from home when she worked for Garcia.  (Docket Entry No. 27 ¶ 3 (citing Docket Entry No. 23-14 at 27:16–25)).  But, as the defendants argue in resisting Maldonado's disability-discrimination claim, Penagos was not Maldonado's replacement because they performed different job duties.  (*See id.* ¶ 1).

19

or that Maldonado was unproductive at home, justifying a denial of her requested work-from-home accommodation. (Docket Entry No. 27 ¶¶ 4, 8). Neither argument warrants summary judgment.

There is a factual dispute as to whether the defendants dissuaded Maldonado from pursuing her ADA accommodation after Garcia initially denied it. On January 17, 2023, Rice called Maldonado to tell her that Garcia reviewed Maldonado's ADA documents and that her "accommodation was not approved." (Docket Entry No. 23-5 at 1). Rice asked if Maldonado would report to work, and Maldonado said she could not do so. (*Id.*). Subsequent emails between Garcia, Rice, and Maldonado support the defendants' position that Garcia and Rice requested additional information to evaluate Maldonado's requested accommodation. (*See, e.g.*, Docket Entry No. 23-11 at 1). But a reasonable jury could also read those emails as making Maldonado choose between coming into the office to discuss receiving an ADA accommodation or taking FMLA leave. At the end of one of the emails in which Garcia requests more information from Maldonado, Garcia stated, "In the meantime, if you are unable to come into the office, you may take FMLA leave." (Docket Entry No. 24-7 at 2). Maldonado responded that her past "medical limitations" prevented her from "report[ing] to work" as "requested." (Docket Entry No. 23-11 at 2). Garcia then replied, "No one is requiring you to report to work tomorrow, but if you can, it would be easier to discuss your request in-person. It is your choice whether to find someone to drive you to work and work in the office or take FMLA leave." (Docket Entry No. 24-9 at 2). A jury could evaluate these emails and find credible Garcia's testimony that she "submitted the [FMLA] paperwork" after Harris County employees "told" her that she had "no option" other than to "take FMLA leave." (Docket Entry No. 24-1 ¶ 8).

For the latter argument, the record is weak as to whether Maldonado was unproductive at home. The record includes Maldonado's work log, which detailed the assignments she completed

and submitted to Garcia as part of her ADA request.  (Docket Entry No. 23-11).  The record also includes deposition testimony from Garcia suggesting that the log showed that Maldonado did not, in fact, accomplish much during the time she worked from home.  (Docket Entry No. 24-5 at 48:8–23 ("[I]t was kind of sparse.")).  Maldonado, of course, claims otherwise.  (*See* Docket Entry No. 24-1 ¶ 6).  This factual dispute, and its relationship to the reasonableness of Maldonado's accommodation request, is for a jury to resolve.  *Harper*, 2017 WL 1881971, at *4 ("[T]he party moving for summary judgment must demonstrate the absence of a genuine issue of material fact . . . .").

Maldonado may proceed to trial on her claim of a failure to accommodate her disability.

### C.    Interference under the Family Medical Leave Act

Maldonado also alleges that Harris County interfered with her rights under the FMLA.  "To establish a *prima facie* case of interference under the FMLA, a plaintiff must show that (1) [s]he was an eligible employee; (2) [her] employer was subject to FMLA requirements; (3) [s]he was entitled to leave; (4) [s]he gave proper notice of [her] intention to take FMLA leave; and (5) [her] employer denied [her] the benefits to which [s]he was entitled under the FMLA."  *Way v. City of Missouri City*, 133 F.4th 509, 523 (5th Cir. 2025) (alterations in original) (quoting *Caldwell*, 850 F.3d at 245).  "Once the plaintiff states a *prima facie* claim, the burden shifts to the employer to articulate a legitimate reason for the employment action, which the employee can rebut by raising a genuine factual dispute over whether the employer's proffered reason was pretextual."  *Id.* at 523–24.  "Beyond showing that an employer denied her exercise or attempt to exercise FMLA rights, an employee must also show that the violation prejudiced her."  *Id.* at 524 (internal quotation marks omitted) (quoting *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 347 (5th Cir. 2013) (per curiam)).

Harris County and Maldonado dispute only the fifth element: whether Harris County denied Maldonado FMLA benefits to which she was entitled. "The FMLA . . . protects an employee's 'right to be reinstated to [her] previous position or an equivalent position upon [her] return from FMLA leave.'" *Id.* (quoting *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 306 (5th Cir. 2021)). Maldonado claims that Harris County did not reinstate her to "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." (Docket Entry No. 24 ¶ 31 (quoting 29 U.S.C. § 2614(a)(1))). She alleges that Harris County selected her replacement during her leave and gave her notice on the day she returned to work that her position would be eliminated two months later. (*Id.*). Harris County counters that Maldonado received her full FMLA benefits: she took the full amount of leave; returned to work for two months; and was offered alternative employment with Harris County when her job was eliminated. (Docket Entry No. 23 ¶ 30; Docket Entry No. 27 ¶ 11).

Maldonado can make a *prima facie* case. Returning an employee to a position "only long enough to be fired" does not amount to a meaningful reinstatement under the FMLA. *Burton v. Univ. of Houston*, Np. 4:24-cv-576, 2025 WL 92960, at *4 (S.D. Tex. Jan. 14, 2025) (quoting *Kendall v. Walgreen Co.*, No. A-12-cv-847, 2014 WL 1513960, at *5 (W.D. Tex. Apr. 16, 2014)); *accord Sprague v. Ed's Precision Mfg., LLC*, 548 F. Supp. 3d 627, 639 (S.D. Tex. 2021). Although Harris County allowed Maldonado to stay in her position for two months after she returned from leave, "the adverse employment action—the decision [to eliminate her position]—was made," *Harper*, 2017 WL 1881971, at *11, on March 8, 2023, when Maldonado was on leave, (Docket Entry No. 23-8; Docket Entry No. 24-12 at 2). And a jury could conclude that the decision to eliminate Maldonado "was a foregone conclusion by the time she returned to work," *Vanstory-Frazier v. CHHS Hosp. Co., LLC*, No. 08-3910, 2010 WL 22770, at *10 (E.D. Penn. Jan. 4, 2010),

22

because Harris County posted the listing for the position that would supersede Maldonado's on February 13, 2023, one month before Maldonado returned from leave, (Docket Entry No. 23-9). These facts establish Maldonado's *prima facie* case. *See Vanstory-Frazier* 2010 WL 22770, at *10 (rejecting a motion for summary judgment the plaintiff returned to her job for two weeks before her termination); *Burke v. Lab'y Corp. of Am.*, No. 08-cv-2072, 2009 WL 3242014, at *5 (M.D. Fla. Oct. 6, 2009) (allowing a case to procced to trial because the employer fired the employee "approximately three minutes after arriving at work").

But as with Maldonado's disability-discrimination claim, Harris County has articulated a legitimate, nondiscriminatory reason for eliminating Maldonado's position, *Way*, 133 F.4th at 523: to hire an assistant to the new Deputy Director of Human Resources with experience in human resources—which Maldonado lacked—and to "restructure the position to support HR functions," which Maldonado had not done and did not have the education or experience to do, (Docket Entry No. 23-8). The record is replete with evidence that Garcia, the new Deputy Director, wanted to replace Maldonado with a human-resources employee who could provide substantive assistance. During her November 2022 interviews for the deputy-director position, Garcia discussed Maldonado's position and explained that she wanted it filled with someone who had the skills and experience Maldonado lacked. Rice explained in emails that the Department did not know what to do with Maldonado and that Penagos had stronger qualifications and could perform different tasks. Garcia reiterated these positions in the letter to Maldonado explaining that her position would be eliminated. Aside from timing, Maldonado makes no other argument to support her pretext claim. Nor does she submit or identify evidence showing a connection between her disability and the decision to eliminate her position. Maldonado has not met her burden to show pretext. The court grants summary judgment on Maldonado's FMLA-interference claim.

### D.      Retaliation

Lastly, Maldonado asserts that Harris County retaliated against her for pursing her rights under the ADA, Rehabilitation Act, and FMLA.   The standard for retaliation claims under the ADA and Rehabilitation Act differs slightly from that of retaliation claims under the FMLA, so the court will discuss them separately.

### 1.   Americans with Disabilities Act and Rehabilitation Act

To establish a *prima facie* case of unlawful retaliation under the ADA and Rehabilitation Act, the plaintiff must show that: (1) she engaged in an activity protected by the statutes; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action.  *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020); *see January*, 608 F. Supp. 3d at 504–05 (setting forth the same test for retaliation under the ADA and the RA).  Once a plaintiff has made a *prima facie* showing of retaliation, "the employer must come forward with a legitimate, nondiscriminatory reason for its action."  *Lyons*, 964 F.3d at 304. "If the employer meets its burden of production, the employee must then demonstrate that the proffered reason is a pretext for retaliation."  *Id.*  "[T]he employee must show that 'but for' the protected activity, the adverse employment action would not have occurred."  *Id.* (citation omitted).

The parties do not dispute Maldonado's *prima facie* showing of retaliation.  (Docket Entry No. 23 ¶¶ 31–32; Docket Entry No. 24 ¶¶ 32–33).   Harris County instead reiterates that Maldonado's "termination was pursuant to a legitimate business reason that was discussed and considered before her ankle injury."  (Docket Entry No. 23 ¶ 32; Docket Entry No. 23-6 at 19:22–20:8).   Maldonado again counters that Harris County's legitimate, nondiscriminatory reason

amounts to pretext because the efforts to replace or terminate her started "only after her disability and request for an accommodation." (Docket Entry No. 24 ¶ 33).

The record shows that discussions about Maldonado's position started before Maldonado's injury and before Maldonado alleged her request for accommodation. (Docket Entry No. 23-7 at 1–2; Docket Entry No. 23-8 at 1; Docket Entry No. 24-8 at 2). The January 4, 2023, email on which Maldonado relies also exhibits no animus towards Maldonado's disability or her assertion of ADA or Rehabilitation Act rights. (Docket Entry No. 23-7 at 1–2). And Maldonado has not proffered evidence showing that her position would not have been eliminated if she had not taken leave. *See Feist*, 730 F.3d at 455 (affirming summary judgment on ADA retaliation claim where the plaintiff "offer[ed] no evidence that [the employer] would not have terminated another employee" under similar conditions). Maldonado has not met her burden, so summary judgment on her retaliation claims under the ADA and Rehabilitation Act are appropriate.

## 2. Family Medical Leave Act

Maldonado asserts retaliation under the FMLA, too. To prove FMLA retaliation, the employee must demonstrate: (1) that the FMLA protected her; (2) that she suffered an adverse employment action; and (3) either that she was treated less favorably than an employee who had not requested leave under the FMLA or that the adverse decision was made because she sought protection under the FMLA. *Acker v. General Motors, L.L.C.*, 853 F.3d 784, 790 (5th Cir. 2017). The third element requires a causal link between the FMLA-protected activity and the adverse action. *Id.*

The parties dispute only the last element. Maldonado's FMLA retaliation claim fails for the same reason her ADA and Rehabilitation Act claims fail: Maldonado cannot show a causal link between her requesting or taking leave and the elimination of her position in favor of a more

substantive and expanded job.  Garcia contemplated eliminating Maldonado's position before she assumed the role as Deputy Director of Human Resources.  Rice recognized that the Department was unsure what to do with Maldonado after Maldonado's previous supervisor retired.  Penagos was hired to fill an expanded and different job than Maldonado had done, consistent with Garcia's desires for more substantive assistance.  Garcia gave consistent reasons for eliminating Maldonado's position in the March 13, 2023, letter.  Maldonado offers no evidence that the Department treated her less favorably than a similarly situated employee who had not taken FMLA leave.  *See Harper*, No. H–16-cv–1678, 2017 WL 1881971, at *13.  Summary judgment on Maldonado's FMLA retaliation claim is granted.

## IV.    Conclusion

Harris County's and Henry Gonzales's motion for summary judgment, (Docket No. 23), is granted in part.  Maldonado may proceed to trial only on her reasonable-accommodation claim.

SIGNED on August 25, 2025, at Houston, Texas.

Lee H. Rosenthal
Senior United States District Judge